UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
JENNY RUBIN,
DEBORAH RUBIN,
DANIEL MILLER,
ABRAHAM MENDELSON
STUART HERSH,
RENAY FRYM,
NOAM ROZENMAN,
ELENA ROZENMAN
and TZVI ROZENMAN,

Case No: 11-mc-00039-P1

**PETITION FOR TURNOVER**

        Petitioners/Judgment-Creditors,

  - against –

HAMAS - ISLAMIC RESISTANCE MOVEMENT
(a.k.a. "Harakat Al-Muqawama Al- Islamiyya"),

        Judgment-Debtor,

  -and-

JP MORGAN CHASE BANK, N.A.,
HSBC BANK, U.S.A., N.A.,
CITIBANK, N.A.,
and MORGAN STANLEY DW, INC.,

        Respondents /Garnishees.
-------------------------------------------------------------------X

Petitioners/Judgment-Creditors ("Petitioners"), by their attorneys, THE BERKMAN LAW OFFICE, LLC, as and for their Petition herein, allege as follows:

**I.     The Underlying Judgment**

1. The Petitioners are nine American citizens who were severely harmed by a triple suicide bombing carried out by the terrorist group Hamas on September 4, 1997, at an outdoor pedestrian mall in Jerusalem, Israel.

2. In May 2002, Petitioners brought suit against Hamas under the civil provisions of the Antiterrorism Act, 18 U.S.C. § 2333, in the U.S. District Court for the District of Columbia. *Rubin et al. v. Hamas-Islamic Resistance Movement*, Civ No. 02-0975(RMU)(D.D.C.).

3. In September 2004, the U.S. District Court for the District of Columbia entered final judgment for the Petitioners against Hamas in the amount of $ 214,500,000. *See Rubin v. Hamas*, 2004 WL 2216489 (D.D.C. 2004) ("Judgment").

4. Petitioners' Judgment remains entirely unsatisfied, despite collection attempts in numerous U.S. jurisdictions and overseas.

5. Petitioners' Judgment was registered in this Court under the caption above.

**II.     The Blocking of Assets Belonging to Hamas' Agencies and Instrumentalities**

6. The International Emergency Economic Powers Act, 50 U.S.C. §1701 *et seq*. ("IEEPA") authorizes the President, upon declaration of a national emergency, to block any property subject to the jurisdiction of the United States. 50 U.S.C. §1702.

7. On January 23, 1995, the President issued Executive Order 12947 (60 Fed. Reg. 5079) pursuant to IEEPA. Executive Order 12947 designated Hamas as a "Specially Designated Terrorist" or SDT, and blocked its assets. Executive Order 12947 also provides for other persons or organizations to be designated as SDTs and thereby have their assets blocked, if found to be ***"owned or controlled by, or to act for or on behalf of"*** Hamas. *Id*.

8. On September 23, 2001, the President issued Executive Order 13224 pursuant to IEEPA. (66 Fed. Reg. 49079). Executive Order 13224 designated Hamas as a "Specially Designated Global Terrorist," or SDGT, and blocked its assets under this designation as well. Executive Order 13224 also provides for other persons or organizations to be designated as SDGTs and thereby have their assets blocked, if found to "*act for or on behalf of*" Hamas or to be "*owned or controlled by*" Hamas. *Id*.

9. On December 4, 2001, the Secretary of the Treasury determined that the Holy Land Foundation for Relief and Development ("HLF") "*acts for or on behalf of*" Hamas, and designated the HLF as an SDT under Executive Order 12947 and as an SDGT under Executive Order 13224. *See Holy Land Foundation v. Ashcroft*, 219 F. Supp.2d 57, 64 (D.D.C. 2002). Specifically, the Treasury found strong evidence that HLF functions as the fund-raising arm of Hamas in the United States. *Id*. at 69-74. Pursuant to these designations, the Office of Foreign Assets Control ("OFAC") in the Treasury issued a "Blocking Notice" freezing all of HLF's funds, accounts and other property. *Id*. at 64.

10. The District Court and Court of Appeals for the District of Columbia upheld the designation of the HLF as an SDT and SDGT on the basis of its activities for and on behalf of Hamas. *Holy Land Foundation v. Ashcroft*, 219 F. Supp.2d 57 (D.D.C. 2002), 333 F.3d 156 (D.C. Cir. 2003) cert. denied 124 S. Ct. 1506 (2004). Indeed, that Court of Appeals held that "HLF's role in the funding of Hamas and of its terrorist activities is incontrovertible." *Id*. at 165.

### III. The Terrorism Risk Insurance Act of 2002 Subjects the Blocked Assets of the HLF to Execution in Satisfaction of Plaintiffs' Judgment Against Hamas

11. Section 201 of the Terrorism Risk Insurance Act of 2002 (Public Law 107-297; 116 Stat. 2322) ("TRIA") provides in relevant part that:

> Notwithstanding any other provision of law ... in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, or for which a terrorist party is not immune under section 1605(a)(7) of title 28, United States Code, the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to, execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable.

TRIA § 201(a).

12. The remedial legislative purpose of the TRIA was described in a decision of the U.S. District Court for the District of Columbia:

> The TRIA was ... specifically intended "to deal comprehensively with the problem of enforcement of judgments rendered on behalf of victims of terrorism in any court of competent jurisdiction by enabling them to satisfy such judgments through the attachment of blocked assets of terrorist parties." 148 Cong. Rec. H8728 (Nov. 13, 2002).

*Hill v. Republic of Iraq*, 2003 WL 21057173 (D.D.C. 2003), at 2.

13. Judge Marrero of this court described TRIA's purpose similarly:

> TRIA § 201 was passed in order to "deal comprehensively with the problem of enforcement of judgments rendered on behalf of victims of terrorism in any court of competent jurisdiction by enabling them to satisfy such judgments through the attachment of blocked assets of terrorist parties. It is the intent of the Conferees that Section 201 establish that such judgments are to be enforced." H.R. Conf. Rep. 107-779, at 27 (2002), reprinted in 2002 U.S.C.C.A.N. 1430, at 1434-35 … As noted by the Second Circuit, the plain meaning of the phrase that blocked assets "shall be subject to

> execution or attachment in aid of execution" "is to give terrorist victims who actually receive favorable judgments a right to execute against assets that would otherwise be blocked." *Smith ex rel. Estate of Smith v. Fed. Reserve Bank of New York*, 346 F.3d 264, 271 (2d Cir. 2003).

*Weininger v. Castro*, 462 F.Supp.2d 457, 483 (S.D.N.Y. 2006).

14. A "*terrorist party*" as defined by TRIA includes both terrorist organizations and designated foreign state sponsors of terrorism. TRIA § 201(d)(4).

15. Thus, TRIA functions as a statutory veil-piercing provision, allowing American victims of terrorism holding a judgment against a "terrorist party" to also enforce that judgment against the assets of "*any agency or instrumentality of that terrorist party.*" § 201. *See e.g. Weininger*, 462 F.Supp.2d at 485 ("TRIA … explicitly provides that where a judgment against a terrorist party exists, not only its blocked assets, but the assets of its agencies and instrumentalities can be used to satisfy the judgment. The language of TRIA itself thus indicates that Congress intended to make the agencies or instrumentalities of statutorily defined terrorist parties liable for qualifying judgments rendered against the terrorist party in question.").

16. The triple suicide bombing in which the Petitioners were injured was an "act of terrorism" as defined by TRIA[1] and Hamas clearly meets the definition of a "terrorist party"

---

[1] Section 201(d)(1) of TRIA provides that the term "act of terrorism" includes any terrorist activity as defined in section 212(a)(3)(B)(iii) of the Immigration and Nationality Act (8 U.S.C. § 1182(a)(3)(B)(iii))). That provision defines terrorist activity as "any activity which is unlawful under the laws of the place where it is committed (or which, if it had been committed in the United States, would be unlawful under the laws of the United States or any State) and which involves any of the following ... The use of any ... explosive, firearm, or other weapon or dangerous device (other than for mere personal monetary gain), with intent to endanger, directly or indirectly, the safety of one or more individuals or to cause substantial damage to property [or] A threat, attempt, or conspiracy to do any of the foregoing."

under TRIA.[2] Therefore, § 201(a) renders all "blocked assets" of Hamas, as well as all "blocked assets" of any agency or instrumentality of Hamas subject to execution and attachment in aid of execution, in order to satisfy the Petitioners' judgment against Hamas.

17. The assets of the HLF were blocked pursuant to Executive Orders 12947 and 13224 specifically because the HLF "*acts for or on behalf of*" Hamas. Such assets thus are "blocked assets" of an agency and instrumentality of Hamas subject to execution under TRIA.[3]

18. Accordingly, the blocked assets of the HLF are subject to execution in satisfaction of judgments against Hamas:

> [T]he Office of Foreign Asset Control, a division of the Treasury Department, determined that the HLF acts "for or on behalf of" Hamas and was thus a Specially Designated Terrorist under Executive Order 12947 and a Specially Designated Global Terrorist under Executive Order 13224. *Holy Land Found. for Relief and Dev. v. Ashcroft*, 219 F. Supp.2d 57, 64 (D.D.C. 2002). These designations allowed the Treasury Department to block all of the HLF's funds, accounts, and real property. *Id*.
>
> The Terrorism Risk Insurance Act of 2002, ("TRIA") subjects the blocked assets of a terrorist party, and any agency or instrumentality of that terrorist party, to execution or attachment in order to satisfy a judgment against them on any claim based on an act of terrorism. Pub. L. No. 107-297, 116 §

---

[2] Section 201(d)(4) of TRIA provides that the term "terrorist party" includes a "terrorist organization" as defined in section 212(a)(3)(B)(vi) of the Immigration and Nationality Act (8 U.S.C. § 1182(a)(3)(B)(vi). That provision defines a terrorist organization as including "an organization ... that is a group of two or more individuals, whether organized or not, which engages in" terrorist activity."

[3] Under TRIA § 201(d)(2) the term "blocked asset" includes any asset blocked pursuant to IEEPA. As noted, the Executive Orders blocking HLF's assets were issued pursuant to IEEPA.

> 201(a), Stat. 2322 (2002). The HLF is an agency and instrumentality of Hamas because it acts "for or on behalf of" Hamas as Hamas' fund-raising agent in the United States. <u>Therefore, the HLF's blocked assets are also subject to attachment and execution under the TRIA in order to satisfy the present judgment against Hamas</u>.

*Ungar v. Palestinian Authority*, 304 F. Supp.2d 232, 241 (D.R.I. 2004) (emphasis added).

## IV. Respondents/Garnishees Are In Possession of Blocked Assets of the HLF

19. Respondents/Garnishees have in their possession assets of the HLF that are blocked under IEEPA.

20. As discussed *supra*, the blocked assets of the HLF are subject to execution in satisfaction of the Petitoners' Judgment, pursuant to § 201 of TRIA.

**WHEREFORE,** it is respectfully requested that the Court enter an order:

a) PURSUANT to Fed.R.Civ.P. 69, New York CPLR §§ 5225 and 5227, and § 201 of TRIA, directing the Respondents-Garnishees to turn over to the Petitioner/Judgment-Creditors, by delivery to their counsel Robert J. Tolchin, Esq., all blocked assets of the Holy Land Foundation for Relief and Development in the possession of Respondents-Garnishees; and

b) GRANTING such other and further relief as is just and proper under the circumstances.

Dated: New York, New York
September 16, 2011

                                            Yours,

                                            THE BERKMAN LAW OFFICE, LLC
*Attorneys for the Petitioners / Judgment-Creditors*

by: /s/ Robert J. Tolchin
     Robert J. Tolchin

111 Livingston Street, Suite 1928
Brooklyn, New York 11201
(718) 855-3627