

SDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/17/11

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

86 Chambers Street
New York, New York 10007

November 17, 2011

*On consent, the requested is granted. So ordered.*

*[signed] USDJ 11/17/11*

**By Facsimile**
Hon. Robert W. Sweet
United States District Judge
United States District Court
500 Pearl Street
New York, New York 10007

RECEIVED NOV 17 2011 JUDGE SWEET CHAMBERS

Re: *Estate of Yaron Ungar et. al. v. Morgan Stanley et. al.*, 05-cv-03710 (RWS); *Rubin et. al. v. Hamas-Islamic Resistance Moverment v. JP Morgan Chase, et al.*, 11-MC-00039 (RWS)

Dear Judge Sweet:

I write respectfully on behalf of the United States (the "Government") with respect to *Estate of Yaron Ungar et al v. Morgan Stanley et al*, 05-cv-3710 (RWS) (hereinafter, the "*Ungar* matter") and *Rubin et al. v. Hamas*, 11-mc- 0039 (RWS) (hereinafter "the *Rubin* matter").[1] In both matters, the respective petitioners brought enforcement actions against Morgan Stanley DW, Inc., Citibank, N.A., JPMorgan Chase Bank, N.A. and HSBC Bank, U.S.A. (collectively, the "Banks"), seeking turnover of bank accounts (the "accounts") held at those institutions in the name of the Holy Land Foundation ("HLF").[2] Several of the Banks have named the Government an Adverse Claimant-Respondent in interpleader actions filed in both matters, due to the fact that the District Court for the Northern District of Texas, in the context of criminal proceedings against HLF, issued an order in 2004 restraining the Banks from transferring the funds in the accounts and, more recently, ordering the funds forfeited to the Government. The purpose of this

---

[1] On November 15, 2011, the Court granted an application to accept the *Rubin* matter as related to the *Ungar* matter.

[2] Both the *Rubin* and the *Ungar* petitioners brought these enforcement actions in an effort to satisfy separate default judgments – one in the District of Rhode Island (Ungar) and one in the D.C. District Court (Rubin)– that they respectively obtained against Hamas; their efforts to seek the HLF funds is premised on the United States Office of Foreign Asset Control's December 4, 2001 determination that the HLF "acts for or on behalf of" Hamas. *See generally* Petition Pursuant to CPLR 5225 and 5227, filed in the *Ungar* matter, at 9-10, 12-13; Petition for Turnover, filed in the *Rubin* matter, at 2-3.

letter is to update the Court regarding developments in the Northern District of Texas and the Court of Appeals for the Fifth Circuit that are relevant to both the *Rubin* and *Ungar* matters, and to respectfully request that the Court stay the *Rubin* matter, as the Court previously did the *Ungar* matter. The Government also requests that its time to answer or otherwise respond to the interpleader complaints be extended until 20 days after the lifting of any stay put in place.

### Background

As the Court may recall, for the past several years the *Ungar* matter has been stayed pending the outcome of criminal proceedings against HLF and related litigation in the Northern District of Texas and the Court of Appeals for the Fifth Circuit.

By way of background, in 2004, an indictment was issued against HLF and several of its officers in the Northern District of Texas. *See* docket in *United States v. Holy Land Foundation, et al.*, 04-cr-240. Soon after, the district court in the Northern District of Texas entered a post-indictment restraining order pursuant to 21 U.S.C. § 853(e)(1)(A) which, *inter alia*, restrained the Banks (and others) from transferring or taking any other action that would affect the availability of the funds held in the specified accounts, including those held by the Banks in New York. The Ungars appealed the restraining order to the Court of Appeals for the Fifth Circuit, an appeal that was ultimately heard *en banc* by that Circuit. *See United States v. Holy Land Foundation*, 493 F.3d 469 (5th Cir. 2007). Of particular importance here, the Fifth Circuit rejected the Ungars' argument that the Texas district court lacked jurisdiction to restrain the Banks or HLF from releasing any funds in the New York bank accounts at issue in the matter before Your Honor. *Id.* at 476. Instead, the Fifth Circuit held that the Ungars must pursue their interest in HLF's assets – including the New York accounts – in accordance with the scheme set forth in the federal criminal forfeiture statute, 21 U.S.C. §853. *Id.* at 477-78. Accordingly, the Ungars were required to wait until the termination of the criminal case to assert their interest in the restrained assets. *Id.*

In 2008, the criminal case against HLF proceeded to trial, and the jury found HLF (and five individual defendants) guilty of all the charges against them. The jury also returned a special verdict determining that $12.4 million constituted the total amount of money involved in the commission of a money laundering conspiracy offense alleged in the indictment. On February 5, 2009, consistent with the special verdict, the district court entered a preliminary order of forfeiture, granting the Government a $12.4 million money judgment against the defendants and forfeiting to the Government the money left in HLF's accounts, including the ones held by the Banks in New York. HLF and the other defendants appealed the verdict to the Fifth Circuit. *See* Dkt No. 09-10560 (5th Cir.). That appeal is fully briefed and has been argued.

After the issuance of the forfeiture order, both the Ungars and the Rubins voluntarily submitted to the personal jurisdiction of the Texas district court by petitioning for ancillary proceedings in the Texas district court and seeking to have the court decide their rights to HLF's accounts. In those petitions, they argued that they were entitled to enforce their judgment against the accounts – including those in New York that are the subject of the enforcement proceedings

presently before this Court — under section 201 of the Terrorism Risk Insurance Act ("TRIA"), Pub. L. No. 107-297, 116 Stat. 232 (codified at 28 U.S.C. § 1610 Note). The Government filed a motion to dismiss the ancillary petitions, arguing that 21 U.S.C. § 853 (c) vested title to HLF's property in the Government at the moment of the crime and therefore the petitioners had no entitlement to the funds in that the property no longer belonged to HLF at the time the petitioners commenced enforcement proceedings.

While the motion in the Texas district court was still pending, the Ungars entered into a settlement agreement with the Palestine Liberation Organization and the Palestinian Authority. Pursuant to that settlement, their civil judgment, which formed the basis of both their claims before this Court and the district court in Texas, was vacated on February 14, 2011. Before the *Ungar* matter could be dismissed by this Court (which would have removed any impediment to the release of the funds to the Government, as required by the Texas district court's preliminary forfeiture order) the Rubins, who are represented by the same counsel as the Ungars, registered their judgment in the Southern District of New York and sought writs of execution against the Banks.

Not long after the vacatur of the *Ungar* judgment, the Texas district court ruled adversely to the Government on the Government's motion to dismiss the Rubin's ancillary proceedings. *See United States v. Holy Land Foundation*, Slip Copy, 2011 WL 3703333 (N.D. Tex. Aug. 19, 2011). Specifically, the district court held, *inter alia,* that section 201 of TRIA "overrides" the criminal forfeiture statute. *Id.* at 6. The court also amended its preliminary order of forfeiture consistent with its decision. The district court stayed its order pending the Government's appeal, noting that it "recognizes this matter involves a complicated and serious legal issue of first impression that could be rationally resolved in the Government's favor on appeal" and that it "favors maintaining the status quo during appeal." Order dated Aug. 19, 2011, at 2-3. The Government appealed the district court's denial of its motion to dismiss to the Fifth Circuit and, recently, filed its opening brief.

In mid-August, the Rubins sought and obtained in the Southern District of New York a 30-day extension of their writ of execution from Part I (Daniels, J.). Several weeks later, after the Texas district court's August 19 stay order had been entered, the Rubins initiated turnover proceedings against the Banks. In late October, the Government filed a motion in the Texas district court seeking clarification whether the Rubins' present enforcement efforts violate the district court's stay order. That motion is still pending.

In recent weeks, the Banks answered the Rubins' turnover petition, and one of the Banks, Morgan Stanley, filed an interpleader action against the Ungars and the Government.[3]

---

[3]In addition, counsel for JPMorgan Chase informed me that JPMorgan Chase had filed an interpleader action, although this filing does not yet appear on the docket. The Government has not yet been served with either interpleader complaint, and thus its time to respond has not yet commenced.

3

## Request For a Stay and For Extension of Time to Respond

The Government respectfully requests that the Court stay proceedings with respect to the *Rubin* matter, as it did with respect to the *Ungar* matter. Specifically, the Government requests that the Court stay the instant proceedings until 20 days after the Fifth Circuit rules on the Government's appeal from the district court's order denying its motion to dismiss the Rubin's ancillary proceeding. The Government further requests that its time to respond to any interpleader motions that are filed are extended until 20 days after any stay put in place is lifted.

The Government makes this request as it anticipates that the Fifth Circuit's decision on the Government's appeal of the district court's denial of its motion to dismiss the ancillary proceeding will directly impact the instant proceedings and the assets at issue. The Fifth Circuit appeal involves the very issue before this Court – *i.e.*, whether the Rubins or the Government is entitled to the money held by the Banks. The Government requests that Your Honor stay the instant matter so as to avoid the possibility of inconsistent rulings with respect to the same assets.

I have contacted counsel for petitioners, who informed me that petitioners do not oppose the request for a stay. Counsel for the Banks have consented to the request for the stay and as well as the extension of time to respond to any interpleader complaints that are served on the Government. One of the banks (Citibank) further requests that the time for filing any other pleadings and responses in this matter are also extended for the duration of the stay.

I thank the Court for its consideration of these requests.

Respectfully submitted,

PREET BHARARA
United States Attorney for the
Southern District of New York

By: MARA E. TRAGER
Assistant United States Attorney
Tel.: (212) 637-2799
Fax : (212) 637-2702
mara.trager@usdoj.gov

cc (via email):    Counsel for the Banks
Robert Tolchin, Esq. (counsel for petitioners)

4